**E-FILED on __8/1/2012____**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LETICIA GONZALEZ JIMENEZ,<br><br>        Petitioner,<br><br>    v.<br><br>JANET NAPOLITANO, Secretary, Department of Homeland Security, TIMOTHY AIKEN, Field Office Director, Immigration and Customs Enforcement, Department of Homeland Security, JUAN OSUNA, Director, Executive Office for Immigration Review, and ERIC HOLDER, JR., Attorney General of the United States,<br><br>        Respondents. | No. C-12-03558 RMW<br><br><br>ORDER GRANTING MOTION FOR STAY OF EXECUTION OF REMOVAL ORDER PENDING DISPOSITION OF PETITION FOR WRIT OF HABEAS CORPUS<br><br><br>**[Re Docket No. 4]** |

On July 9, 2012, petitioner submitted a petition for writ of habeas corpus pursuant to 22 U.S.C. § 2241.  Petitioner seeks an order of remand directing the Board of Immigration Appeals ("BIA") to reissue its final order of removal, which would permit petitioner to file a timely motion to reopen the underlying removal proceeding on the basis of ineffective assistance of counsel. Together with her petition, petitioner submitted a motion for a temporary stay of removal pending disposition of the petition for writ of habeas corpus.  Having considered the papers submitted by the parties, the court grants the motion.

**I. BACKGROUND**

Petitioner was born in Mexico and entered the United States on February 24, 1990.  Dkt. No. 1 ¶ 1.  She is a beneficiary of two immigrant visas which are not current.  *Id.*  Petitioner is the mother of four minor children, who are United States citizens, and is the sole caregiver for her elderly mother and father, who are also lawfully in the United States.  *Id.*  Petitioner's husband was removed on or about December 12, 2011 and is unable to find work in Mexico despite being a skilled ironworker.  *Id.*

In 1996, petitioner and her husband consulted a lawyer, Miguel Gadda, regarding the possibility of obtaining lawful permanent residency.  *Id.* ¶ 9.  Gadda ultimately filed a Form I-589 application for asylum, without disclosing that this was an asylum application and without interviewing petitioner or her husband on any asylum claims they had.  *Id.* ¶¶ 9-10, 12.  Gadda also failed to inform them that, with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), suspension of deportation was no longer possible, and petitioner and her husband did not meet the residency requirement for cancellation of removal under new 8 U.S.C. § 1229b(b)(1).  *Id.* ¶ 11.  After the asylum petition was filed, removal proceedings were commenced against petitioner and her husband.  *Id.* ¶ 13.  They appeared for a final hearing on February 20, 1998, for which Gadda failed to prepare them or explain the purpose of the hearing.  *Id.* ¶ 14.  After the hearing, Gadda informed them that they had received "voluntary departure."  *Id.*

Gadda continued to represent the couple in appeals before the BIA and Court of Appeals.  Unbeknownst to petitioner or her husband, Gadda was suspended in the practice of law by the California State Bar around August 2, 2001, and by the BIA around October 2, 2001.  *Id.* ¶ 16.  Thereafter, on September 23, 2002, the BIA dismissed the appeal.  *Id.* ¶ 17.  Gadda filed a petition for review in the Court of Appeals on October 21, 2002, and a brief on May 27, 2003.  *Id.* ¶ 19.  Petitioner received a letter from Gadda dated December 12, 2002 with a case status update.  *Id.* ¶ 20.  After that, neither she nor her husband heard from Gadda for a year and a half.  *Id.*  In June 2004, they reached an individual at Gadda's office who stated Gadda could no longer represent them or anyone else.  *Id.*  They were referred to an attorney named Bruce Wong.  *Id.*

**United States District Court**
For the Northern District of California

1   Wong agreed to represent them and stated he would file an administrative motion to reopen

2   with the BIA in addition to litigating in the Court of Appeals. *Id.* ¶ 21. In the Court of Appeals,

3   Wong sought but was denied an extension of time to file a supplemental briefing. *Id.* ¶ 22. Wong

4   was directed to seek leave to file a supplemental brief or to adopt Gadda's brief, and he opted for the

5   latter around August 23, 2004. *Id.* Meanwhile, Wong did not immediately file a motion to reopen

6   with the BIA. *Id.* ¶ 24. On January 6, 2005, the Court of Appeals denied the petition for review.

7   *Id.* ¶ 25. Before the mandate issued around March 1, 2005, Wong finally filed a motion to reopen

8   with the BIA around February 23, 2005. *Id.* ¶ 26. The BIA denied the motion due to untimeliness

9   and undue delay. *Id.* ¶ 27. The Court of Appeals denied review of the decision on March 1, 2007.

10   *Id.* ¶¶ 28, 30.

11   On December 9, 2011, petitioner and her husband were arrested by agents of the Department

12   of Homeland Security. *Id.* ¶ 33. Petitioner was placed on an order of supervision by respondent

13   Aiken and was ordered to report on or before July 10, 2012.[1] *Id.* ¶ 34. Petitioner retained new

14   counsel, who has tried without success to obtain the administrative record for petitioner's case. *Id.*

15   ¶¶ 35-36. Counsel filed a Freedom of Information Act ("FOIA") request with respondents Holder

16   and Osuna and on March 12, 2012 was told a response was forthcoming within 30 days, but to date

17   petitioner has not received a response. *Id.* ¶ 36.

18   Petitioner claims her constructive detention is unlawful in violation of her Fifth Amendment

19   right to due process based on the following:

20   1.   Failure of Wong to file a timely motion to reopen so as to trigger equitable tolling.

21   2.   Failure of Wong to assert petitioner's claim for economic asylum under *Beballah v.*

22   *Ashcroft*, 367 F.3d 1067 (9th Cir. 2004).

23   3.   Failure of respondents Holder and Osuna to comply with 5 U.S.C. § 552 *et seq.* as to

24   the FOIA request for petitioner's administrative record.

25

26

27

28

---

[1] After this case was filed, the parties the parties stipulated that petitioner would not be removed before August 1, 2012. Dkt. No. 9.

1    In the alternative, petitioner seeks review of her unlawful detention based on the failure of the BIA

2    to advise her that Gadda had been suspended from practice, which precluded her from seeking new

3    counsel and left her an unknowing pro se litigant.

## II.  ANALYSIS

### A.    Legal Standards

6    In evaluating whether to issue a stay, the court considers four factors: "(1) whether the stay

7    applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the

8    applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially

9    injure the other parties interested in the proceeding; and (4) where the public interest lies." *Leiva-*

10    *Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (quoting *Nken v. Holder*, 556 U.S. 418, 434, 129

11    S. Ct. 1749, 1761 (2009)).  In light of the Supreme Court's decision in *Nken*, the Ninth Circuit has

12    held that "a petitioner seeking a stay of removal must show that irreparable harm is probable and

13    either: (a) a strong likelihood of success on the merits and that the public interest does not weigh

14    heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips

15    sharply in the petitioner's favor." *Id.* at 970.

16    As to the required threshold showing of irreparable harm, the Court in *Nken* stated that

17    "[a]lthough removal is a serious burden for many aliens, it is not categorically irreparable." *Nken*,

18    556 U.S. at 435.  "Instead, a noncitizen must show that there is a reason specific to his or her case, as

19    opposed to a reason that would apply equally well to all aliens and all cases, that removal would

20    inflict irreparable harm—for example, that removal would effectively prevent her from pursuing her

21    petition for review, or that, even if she prevails, she could not be afforded effective relief." *Leiva-*

22    *Perez*, 640 F.3d at 969.  Important irreparable harm factors include physical danger to the individual

23    if returned to his or her home country, separation from family members, medical needs, and

24    potential economic hardship. *Id.* at 969-70.

25    As to the likelihood of success on the merits, the Ninth Circuit has noted that there are many

26    formulations of the required degree of likely success—including "reasonable probability" or "fair

27    prospect," "a substantial case on the merits," or when "serious legal questions are raised"—but

28

ORDER GRANTING MOTION FOR STAY OF EXECUTION OF REMOVAL ORDER PENDING DISPOSITION OF PETITION FOR
WRIT OF HABEAS CORPUS—No. C-12-03558 RMW
LJP                                                                4

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    concluded that these are "essentially interchangeable" and do not demand a showing that success is

2    more likely than not. *Id.* at 966-68.

3         Finally, the factors of harm to the opposing party and the public interest merge when the

4    government is the opposing party. *Nken*, 556 U.S. at 435.  The Court has acknowledged there is a

5    public interest in preventing aliens from being wrongfully removed, but it has also rejected the

6    assumption that the balance of hardships typically weighs in the applicant's favor. *Id.* at 436.  On the

7    government's side, "[t]here is always a public interest in prompt execution of removal orders: The

8    continued presence of an alien lawfully deemed removable undermines the streamlined removal

9    proceedings IIRIRA established, and permits and prolongs a continuing violation of United States

10   law." *Id.* (citation and internal quotation omitted).  "The interest in prompt removal may be

11   heightened by the circumstances as well–if, for example, the alien is particularly dangerous, or has

12   substantially prolonged his stay by abusing the processes provided to him." *Id.*

13        **B.    Jurisdiction**

14             **1.    The "In Custody" Requirement**

15        Respondents first argue that this court lacks jurisdiction because habeas jurisdiction lies only

16   over claims brought by petitioners who are physically in custody.  Respondents, however, miscite

17   *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989), which clearly states: "Our interpretation of the 'in

18   custody' language [of 28 U.S.C. § 2241(c)(3)] has *not* required that a prisoner be physically confined

19   in order to challenge his sentence on habeas corpus." *Id.* (emphasis added).  When conditions of

20   release impose "severe restraints on individual liberty," one can be considered in custody for

21   purposes of the habeas corpus statute even though one is not imprisoned. *See Hensley v. Municipal*

22   *Court*, 411 U.S. 345, 348-53 (1973).  An alien subject to a final order of deportation is deemed to be

23   "in custody," even if he is not suffering any actual physical detention. *Nakaranurack v. U.S.*, 68

24   F.3d 290, 293 (9th Cir. 1995); *see also Rosales v. Bureau of Immigration and Customs Enforcement*,

25   426 F.3d 733, 735 (5th Cir. 2005) ("At least four circuits have held that a final deportation order

26   subjects an alien to a restraint on liberty sufficient to place the alien 'in custody.'" (citing, *inter alia*,

27   *Nakaranurack*)).  Thus, since petitioner is subject to a final order of removal, she is "in custody" for

28   the purposes of habeas jurisdiction.

ORDER GRANTING MOTION FOR STAY OF EXECUTION OF REMOVAL ORDER PENDING DISPOSITION OF PETITION FOR
WRIT OF HABEAS CORPUS—No. C-12-03558 RMW
LJP                                                              5

1

**2.      8 U.S.C. § 1252(g)**

2        Respondents next argue that the court lacks jurisdiction to issue a stay under 8 U.S.C.

3   § 1252(g), which provides:

4           Except as provided in this section and notwithstanding any other provision of law
          (statutory or nonstatutory), including section 2241 of title 28, or any other habeas
5           corpus provision, and sections 1361 and 1651 of such title, no court shall have
          jurisdiction to hear any cause or claim by or on behalf of any alien arising from the
6           decision or action by the Attorney General to commence proceedings, adjudicate
          cases, or execute removal orders against any alien under this chapter.
7

8   Plaintiff contends, and respondents apparently concede, that the REAL ID Act does not deprive this

9   court of jurisdiction to hear the underlying habeas claim. *See Singh v. Gonzales*, 499 F.3d 969, 979

10  (9th Cir. 2007). *Singh v. Gonzales* held that an ineffective assistance of counsel claim based on

11  conduct occurring after the issuance of the final removal order, and simply seeking a restarting of

12  procedural deadlines that would allow the petitioner "a day in court," could not be construed as a

13  claim seeking judicial review of the final order of removal itself. *Id.* Thus, 8 U.S.C. §§ 1252(a)(5)

14  and (b)(9) did not strip the court of jurisdiction. *See id.* Just as, under *Singh v. Gonzales*,

15  petitioner's claim does not challenge the merits of the final order of removal, it also does not

16  challenge the merits of the decision to execute the removal order. Rather, petitioner seeks "a

17  temporary setting aside of the source of the Government's authority to remove" while her petition is

18  pending. *See Leiva-Perez*, 640 F.3d at 966 (quoting *Nken*, 129 S. Ct. at 1758). Respondents'

19  authorities are distinguishable because a stay of removal was the ultimate relief sought by the habeas

20  petitions in those cases. *See e.g.*, *Ma v. Holder*, --- F. Supp. 2d ----, 2012 WL 1755840 at *2 (N.D.

21  Cal. 2012) ("Petitioner seeks a writ of habeas corpus granting a stay of deportation during the BIA's

22  adjudication of her motion to reopen."); *Chowdhury v. Ashcroft*, 241 F.3d 848, 851 (7th Cir. 2001)

23  ("[A]t the end of the day Chowdhury was asking the district court to stay the execution of his

24  deportation order, pending a Board decision on his motion to reopen.").

25          Where the stay of removal is interim relief to allow the court itself to adjudicate a

26  permissible underlying claim, at least one court in this district has found that § 1252(g) does not

27  deprive it of jurisdiction. *See Dhillon v. Mayorkas*, 2012 WL 1338132 (N.D. Cal. 2010).

    Respondents argue that *Dhillon* is distinguishable because the stay was based on a proceeding other

28

*United States District Court*
For the Northern District of California

ORDER GRANTING MOTION FOR STAY OF EXECUTION OF REMOVAL ORDER PENDING DISPOSITION OF PETITION FOR
WRIT OF HABEAS CORPUS—No. C-12-03558 RMW
LJP                                                              6

United States District Court
For the Northern District of California

than the removal proceedings.  However, the more relevant consideration seems to be that the

underlying claims here and in *Dhillon* may be heard by this court.  *Dhillon* also noted that *Walters v.*

*Reno*, 145 F.3d 1032 (9th Cir. 1998), tended to favor the party seeking a stay.  In *Walters*, the Ninth

Circuit held that the district court could issue a permanent injunction prohibiting future deportation

of aliens who had not received due process.  *Id.* at 1051-53.  The court noted that the government

did not, and could not, assert that the district court was without jurisdiction to hear the due process

claims brought by the plaintiffs because those did not arise from a decision or action to commence

proceedings, adjudicate cases, or execute removal orders under § 1252(g).  *Id.* at 1052.  The court

further noted that the plaintiffs were not challenging the merits of the government's decision to

execute removal orders "except to the extent necessary to substantiate their due process claims."  *Id.*

> Although the constitutional violations ultimately may have led to the plaintiffs'
> erroneous deportation, the resulting removal orders were simply a consequence of the
> violations, not the basis of the claims. Moreover, if the plaintiffs prevail on their
> claims, they will not be entitled to any substantive benefits; rather, they will only be
> entitled to reopen their proceedings.

*Id.*  The court concluded, "[b]ecause the district court clearly had jurisdiction to hear the [due

process claims], it had jurisdiction to order adequate remedial measures, including injunctive

provisions that ensure that the effects of the violation do not continue."  *Id.* at 1053.

In cases after *Walters*, the Ninth Circuit has reaffirmed that § 1252(g) does not bar the

granting of preliminary injunctive relief pending resolution of the plaintiffs' constitutional claims.

*See Catholic Social Servs., Inc. v. INS*, 232 F.3d 1139, 1150 (9th Cir. 2000); *Barahona-Gomez v.*

*Reno*, 167 F.3d 1228, 1234 (9th Cir. 1999).  The reasoning in *Walters* is very similar to that in *Singh*

in that the court found a claim that simply seeks further proceedings is not viewed as a challenge to

the government's substantive decision that would be barred by provisions in § 1252.  Since

petitioner's claim here simply seeks an opportunity to file a motion to reopen, the court finds it does

not lack jurisdiction under § 1252(g).

### C.        Whether a Stay Should Issue

Having found no jurisdictional bar to entertaining petitioner's claim, the court applies the

framework set forth in *Leiva-Perez* to evaluate whether a stay of removal should issue pending the

court's resolution of the habeas petition.

### 1.    Likelihood of Success on the Merits

With respect to the merits, respondents argue that petitioner failed to exhaust administrative remedies because she did not file a motion to reopen alleging ineffective assistance of counsel against Wong and that her FOIA request for her administrative record is irrelevant.  Petitioner responds that the two matters are intertwined because she has been precluded from filing a motion to reopen "since concrete evidence of Wong's errors and omissions is unavailable due to the agency's withholding of the file."

Petitioner acknowledges that, ordinarily, her claim would be barred for failure to exhaust under *Singh v. Napolitano*, 649 F.3d 899, 902 (9th Cir. 2011).  However, she argues that defendants' failure to produce her administrative record is a second due process violation that interferes with her right to effective assistance of counsel, citing *Singh v. Waters*, 87 F.3d 346, 349 (9th Cir. 1996).  In *Singh v. Waters*, the Ninth Circuit held that the petitioner was unlawfully removed for two reasons, the second being that the government failed to inform the petitioner's counsel that it had found his file. *Id.*  Counsel had requested the petitioner's file a year before his deportation but had been told "that the INS could not locate the file but would contact him if it was found." *Id.* at 347.  The court found that, by having the file and failing to inform counsel prior to the petitioner's arrest, "the Service effectively scuttled the right to counsel guaranteed to Singh by statute.  The consequence was that [counsel] was prevented from seeking a stay of deportation in an orderly way that would have prevented the physical removal of Singh from the United States." *Id.* at 349 (citations omitted).

*Singh v. Waters* does not explicitly excuse the exhaustion of administrative remedies under the circumstances of this case.  There, the court found "[the petitioner] is not to be charged with having failed to exhaust his administrative remedies when the Service by physically removing him made the full reopening of his case impossible." *Id.* at 349-50.  Here, petitioner has not been physically removed, and it is not impossible for petitioner to move the BIA to reopen her case, even if she does not have her full administrative record.  The court notes that petitioner does have access to some of the relevant documents, including Wong's brief before the Court of Appeals, as she has submitted them with her petition.  *See* Dkt. Nos. 2-3.  At the same time, it appears that petitioner

1    would have to seek relief from the district court to enforce her FOIA request, *see* 5 U.S.C.

2    § 552(a)(4)(B), and until then might have to proceed before the BIA with an incomplete record.

3         For the purposes of analyzing whether a stay should issue, the court finds that, in light of

4    *Singh v. Waters*, petitioner has demonstrated a substantial case on the merits.  The court need not

5    conclusively decide at this stage whether petitioner has been excused from exhausting administrative

6    remedies.

7                          **2.    Irreparable Harm**

8         Petitioner argues that she will suffer irreparable harm if removed for several reasons.  First,

9    she is the sole caretaker of her four minor children.  One of petitioner's children suffers from vision

10   impairments requiring surgery, but he cannot have the corrective surgery until he turns 12 years old

11   in September.  Dkt. No. 12 ¶ 10.  His treating physician is in California and has been treating him

12   for ten years.  *Id.*  Petitioner is in the process of obtaining her insurance coverage for her children, as

13   the coverage from her husband's union recently expired.  *Id.* ¶ 11.  Because there will be no one left

14   to care for them in the United States, petitioner's children will have to go with her to Mexico if she is

15   removed.  *Id.* ¶ 12.  Second, petitioner is the primary caretaker for her elderly parents.  Her father

16   has requires extensive care, including assistance walking, going to the bathroom, and bathing.  *Id.* ¶

17   14.  The other members of petitioner's family are unable to fully provide the care her father needs.

18   *Id.* ¶ 16.  Finally, petitioner argues that she will lose the ability to pursue her case if removed, as the

19   BIA has interpreted its regulations as stripping it of jurisdiction to hear a motion to reopen once a

20   petitioner is removed, citing *In re Armendarez-Mendez*, 24 I. & N. Dec. 646, 649-653, 660 (BIA

21   2008).

22        Respondents argue that the burdens petitioner asserts "all flow from the normal consequences

23   of removal" and note *Nken*'s language that removal is not categorically irreparable.  Respondents

24   also argue that, under *Coyt v. Holder*, 593 F.3d 902, 907 (9th Cir. 2010), petitioner's imminent

25   removal does not prevent her from filing a motion to reopen with the BIA.

26        In *Nken*, the Court held that removal is not categorically irreparable because, after the

27   passage of IIRIRA, "[a]liens who are removed may continue to pursue their petitions for review, and

28   those who prevail can be afforded effective relief by facilitation of their return, along with

restoration of the immigration status they had upon removal." 556 U.S. at 435.  Thus, the mere fact of being removed cannot constitute irreparable harm.  *Nken*, however, did not address the case-specific burdens that petitioner has raised here and which are central under *Leiva-Perez*.  In addition to the burdens on petitioner herself, removal is likely to cause major disruptions to the lives of her close family.  These disruptions would not as easily be remedied by simply facilitating petitioner's return if she is ultimately succeeds in obtaining permanent residency.  Moreover, separation from family members, medical needs, and potential economic hardship are among the considerations explicitly listed in *Leiva-Perez* as important.  Thus, the court finds that petitioner has shown that irreparable harm is probable.

As to whether petitioner would be foreclosed from pursuing review if she is removed, *Coyt* clearly states that "the physical removal of a petitioner by the United States does not preclude the petitioner from pursuing a motion to reopen."  593 F.3d at 907.  Petitioner argues, but without citation, that respondent Eric Holder "has declined to follow Circuit precedent as to 8 CFR, Section 1003.2(d)" and that whether he will comply with *Coyt* remains to be seen.  The Ninth Circuit also noted a circuit split on the issue.  *Coyt*, 593 F.3d at 907 n.3.  Thus, while the chance of petitioner being barred from filing a motion to reopen would not, standing alone, be sufficient, it does at least marginally contribute to the likelihood that petitioner would be irreparably harmed by being removed.

### 3.    The Public Interest

Petitioner argues that it is in the public interest "to promote the support of minor citizen children and elderly citizens and lawful permanent resident aliens."  Petitioner further argues that it is in the public interest to rectify errors and omissions in removal proceedings.  In response, respondents contend that there is a significant public interest in ensuring prompt removal, citing the Supreme Court's language in *Nken*.  All of these appear to be valid concerns.  Taken together, the court finds that the public interest does not particularly weigh in either party's favor.  Notably, although there is always an interest in prompt removal of unlawful aliens, this case does not present any circumstances that *Nken* held would give rise to a "heightened" interest.  *See* 556 U.S. at 436 ("The interest in prompt removal may be heightened by the circumstances as well-if, for example,

1   the alien is particularly dangerous, or has substantially prolonged his stay by abusing the processes

2   provided to him.").

3         Considering all of the factors together, the court finds that petitioner has met her burden to

4   justify a stay under the second prong of *Leiva-Perez*, i.e. she has shown that irreparable is probable,

5   a substantial case on the merits, and that the balance of hardships tips sharply in her favor.

6   ### III.  ORDER

7         For the foregoing reasons, the court grants the motion for a stay of removal.  Respondents

8   shall take no action to remove petitioner from the United States pending disposition of petitioner's

9   habeas corpus petition, or upon further order of this court, whichever first occurs.

10

11

12   DATED:       August 1, 2012

13   RONALD M. WHYTE
     United States District Judge

**United States District Court**
For the Northern District of California